UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CALVIN EUNICE MARSHALL,

        Plaintiff,

v.

RANDEE REWERTS et al.,

        Defendants.

_____/

Case No. 1:24-cv-390

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint in the United States District Court for the Eastern District of Michigan. In an order (ECF No. 4) entered on April 15, 2024, the Eastern District transferred the case to this Court for further proceedings. This Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues DRF Warden Randee Rewerts, as well as the following registered nurses (RN) at DRF: Unknown Parties #1, #2, #3, and #4, Unknown Wuest, Russell Holdwick, Christine Lewis, Drew Wright, and Allison Melinowski.

Plaintiff was transferred to DRF from the G. Robert Cotton Correctional Facility (JCF) on August 10, 2023. (Compl., ECF No. 1, PageID.6.) Plaintiff alleges that at the time of his transfer, his chest and stomach were hurting. (*Id.*) Plaintiff could not climb off of his top bunk and "couldn't even yell." (*Id.*)

When Plaintiff arrived at DRF, he spoke to Defendant Rewerts as well as healthcare about his symptoms. (*Id.*) Plaintiff asked to receive a chest X-ray, as well as a brain MRI for dizziness. (*Id.*) Plaintiff also indicated that it had been two years since he was last tested for tuberculosis, and requested a flu shot. (*Id.*) Plaintiff alleges that "nothing [was] done at all." (*Id.*)

On October 10, 2023, Plaintiff spoke to Defendant Wuest about his hernia. (*Id.*, PageID.7.) Defendant West told Plaintiff that he would "get a consultation and surgery on [the] hernia." (*Id.*) Plaintiff contends that he never received surgery and instead was "transfer[r]ed to another facility in retaliation or harassment to filing several suits." (*Id.*) Plaintiff avers that he is in extreme pain and that nothing has been done as of March 27, 2024. (*Id.*) Plaintiff alleges further that he saw Defendant Holdwick about his hernia, but "at no time was [he] given this help for pain." (*Id.*)

Plaintiff has attached various exhibits to his complaint that provide more context for his allegations.[1] When Plaintiff was transferred to DRF, healthcare staff noted Plaintiff's inguinal hernia. (*Id.*, PageID.15.) They also noted that Plaintiff had last received the PPD skin test for tuberculosis on March 16, 2022, and that he had been symptom-free for 30 days. (*Id.*) No follow-up for tuberculosis was recommended. (*Id.*)

Plaintiff submitted a kite to healthcare on September 9, 2023, and it was received by Defendant Melinowski. (*Id.*, PageID.18.) In the kite, Plaintiff stated: "I have been having stomach pain it really hurts I also have a hernia that hernia is part that hurts." (*Id.*) It was noted that Plaintiff had been contacted in his housing unit three times, and that he was a "no show" three times. (*Id.*) It was also noted that Plaintiff would be scheduled for an appointment. (*Id.*)

Plaintiff's exhibits indicate he saw Defendant Holdwick on September 20, 2023, for a scheduled appointment. (*Id.*, PageID.16.) Plaintiff told Defendant Holdwick that the right inguinal hernia was becoming worse. (*Id.*) Plaintiff indicated that "the hernia has become more difficult to reduce (with increased pain when he reduces the hernia himself)." (*Id.*) Plaintiff told Defendant Holdwick that raising his voice or yelling caused "significant pain." (*Id.*) Plaintiff noted that he

---

[1] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the district court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint.

had to hold the area where the hernia is to climb down from the top bunk, that he had been unable to exercise, and that "the pain ha[d] begun to interfere with normal activities." (*Id.*)

Plaintiff's exhibits also indicate that he saw Defendant Wuest on October 10, 2023. (*Id.*, PageID.14.) Defendant West noted that Plaintiff had a "large right inguinal hernia, reducible, roughly tennis ball size" near his scrotum. (*Id.*) Plaintiff told Defendant Wuest that he had had the hernia since childhood, and that it was "enlarging and becoming more painful." (*Id.*) Plaintiff reported that walking was uncomfortable. (*Id.*) Defendant Wuest noted that she was requesting a general surgical consultation for Plaintiff. (*Id.*)

On January 8, 2024, Plaintiff submitted a healthcare request, stating that he had chest pains and requesting a chest X-ray. (*Id.*, PageID.13.) An unknown RN responded that Plaintiff had been seen in the clinic on January 7, 2024 and agreed to a nursing appointment "while [unknown was] in house." (*Id.*)

Based on the foregoing, Plaintiff states that he is asserting Eighth Amendment claims premised upon Defendants' deliberate indifference to his medical needs. (*Id.*, PageID.8–11.) Given his mention of retaliation, the Court construes Plaintiff's complaint to also assert First Amendment retaliation claims. Plaintiff seeks declaratory relief, damages, and various forms of injunctive relief, including tuberculosis testing, surgery for his hernia, a chest X-ray, a brain MRI, and a transfer to a prison "within Detroit city limits." (*Id.*, PageID.11–12.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

4

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Claims Against Defendants Lewis and Wright

Plaintiff names RNs Lewis and Wright as Defendants in this case, but he fails to mention Defendants Lewis and Wright in the body of his complaint. Moreover, Defendants Lewis and Wright are not mentioned by name in any of the documents that Plaintiff has attached to his complaint. One of the documents consists of a health care request that Plaintiff submitted on

January 8, 2024, complaining about worsening chest pains. (ECF No. 1, PageID.13.) The response thereto was written by someone with the initials "RW" and stated: "Seen in clinic on 1/7/2024 [and] agreed to a nursing appointment while [illegible] is in house." (*Id.*) While RW could be Defendant Wright, nothing within Plaintiff's complaint or the attached documents clarifies who RW is.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff fails to allege any wrongdoing on the part of Defendants Lewis and Wright, those Defendants are properly dismissed from this action.

B.      **Claims Against Remaining Defendants**

1.      **First Amendment Retaliation Claims**

As noted above, Plaintiff vaguely mentions that he was transferred from DRF in retaliation for lawsuits that Plaintiff filed. In an abundance of caution, the Court has construed Plaintiff's complaint to assert First Amendment retaliation claims against Defendants.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

However, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (holding that "bare allegations of malice on the defendants' parts are not enough to establish retaliation

claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, Plaintiff merely alleges the ultimate fact of retaliation in this matter and provides no facts to suggest that any of the named Defendants engaged in any adverse action because of any protected conduct in which Plaintiff may have engaged. Accordingly, to the extent Plaintiff intended to allege First Amendment retaliation claims against Defendants, such claims will be dismissed.

### 2. Eighth Amendment Claims

Plaintiff contends that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to his medical needs. The Court's dismissal of Defendants Lewis and Wright, *supra*, leaves Plaintiff's Eighth Amendment claims against Defendants Rewerts, Wuest, Holdwick, Melinowski, and the Unknown Parties.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

10

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.   Objective Prong

Here, Plaintiff suggests that he had not been given tuberculosis testing for two years, and that he has not received a flu shot. Certainly, tuberculosis and the flu can become serious medical conditions. Plaintiff's complaint, however, is devoid of any facts suggesting that he was exposed to either tuberculosis or flu and that he was experiencing symptoms of such. Given the lack of such allegations, the Court simply cannot "infer a serious medical need" with respect to Plaintiff's

mentions of tuberculosis testing and a flu shot. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Accordingly, any Eighth Amendment claims premised upon tuberculosis testing and a flu shot will be dismissed.

Plaintiff also contends that he suffers from a large inguinal hernia, and his exhibits indicate that Plaintiff has complained that the hernia has grown larger and more painful. Plaintiff also reports that walking is uncomfortable. Given these allegations, the Court concludes that Plaintiff has adequately alleged a serious medical need with respect to his hernia. The Court will consider the subjective prong with respect to Plaintiff's hernia and each remaining named Defendant below.

    **b.**  **Subjective Prong**

      ***i.***  ***Defendants Unknown Parties***

The only time Plaintiff mentions Defendants Unknown Parties #1, #2, #3, and #4 in his complaint is in his "General Allegations" section, where Plaintiff states that these individuals were working on January 7, 2024. (Compl., ECF No. 1, PageID.4–5.) Although Plaintiff's one exhibit suggests that he was seen by healthcare on January 7, 2024, his complaint is completely devoid of any allegations suggesting that any of the Unknown Parties were personally involved in any treatment provided to Plaintiff that day. Given that failure, Plaintiff's complaint does not permit the court to infer that Defendants Unknown Parties #1, #2, #3, and #4 were aware of the complications caused by Plaintiff's hernia and were indifferent to those complications. *See Frazier*, 41 F. App'x at 764. Plaintiff's Eighth Amendment claims against Defendants Unknown Parties #1, #2, #3, and #4 will, therefore, be dismissed.

### ii. *Defendant Rewerts*

Plaintiff contends that he spoke to Defendant Rewerts, the Warden of DRF, about his health concerns. (Compl., ECF No. 1, PageID.6.) Plaintiff avers that he "spoke to Warden Rewerts about health care not helping," but "at no time did the [W]arden care." (*Id.*, PageID.7.) Plaintiff references a kite that he sent to Defendant Rewerts about the situation. (*Id.*)

As an initial matter, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Moreover, the Court notes that administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*,

372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)).

Plaintiff has failed to allege that Defendant Rewerts engaged in any active unconstitutional behavior. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Rewerts will be dismissed.

### iii.     *Defendant Melinowski*

Plaintiff does not mention Defendant Melinowski in the body of his complaint, but his exhibits indicate that she was the one who received Plaintiff's healthcare kite dated September 9, 2023. (Compl., ECF No. 1, PageID.18.) In the kite, Plaintiff wrote: "I have been having stomach pain it really hurts I also have a hernia that hernia is part that hurts." (*Id.*) It was noted that Plaintiff had been contacted in his housing unit three times, that he had been a "no show" three times, and that an appointment would be scheduled. Plaintiff simply fails to allege that Defendant Melinowski engaged in any active unconstitutional behavior; instead, it appears that Defendant Melinowski tried to assist Plaintiff by noting that he would be scheduled for an appointment. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Melinowski will be dismissed.

### iv.     *Defendants Wuest and Holdwick*

Plaintiff's complaint and exhibits suggest that he received some treatment for his hernia from Defendants Wuest and Holdwick. Plaintiff's exhibits indicate that he saw Defendant

Holdwick on September 20, 2023.[2] At that time Plaintiff told Defendant Holdwick that the hernia was causing more pain and was becoming "more difficult to reduce (with increased pain when he reduces the hernia himself)." (Compl., ECF No. 1, PageID.16.) Plaintiff also noted that raising his voice and yelling caused pain, and that he had to hold the area where the hernia was located when climbing down from his top bunk. (*Id.*) Nonetheless, Plaintiff does not suggest that he was not able to reduce the hernia himself, nor does he suggest that the hernia was not reduced when Holdwick examined him.

Plaintiff provides only a conclusory allegation that Defendant Holdwick provided no help "for pain" (*id.* at 7), Plaintiff provides this Court with no *facts* that would plausibly suggest that he needed treatment for the hernia on the day he saw Defendant Holdwick. Nor does Plaintiff allege facts that suggest that after the examination Defendant Holdwick was made aware of Plaintiff's continuing issues with his hernia or that Defendant Holdwick was made aware that Plaintiff was no longer able to reduce the hernia on his own. Indeed, there is nothing in the complaint that indicates that Defendant Holdwick was otherwise involved in Plaintiff's care outside of his one in-person examination of Plaintiff. Looking at the two complaint paragraphs that specifically mention Holdwick (*id.* at ¶¶ 13, 22), and the single page relating to Plaintiff's September 20, 2023, encounter with Holdwick, there are no facts alleged from which the Court might infer that Holdwick acted with "deliberate indifference."

Plaintiff also received some treatment for his hernia from Defendant Wuest. He alleges that he saw her for an appointment on October 10, 2023. (*Id.*) At that appointment, Defendant Wuest noted that the hernia was about the size of a tennis ball and was reducible. (*Id.*, PageID.14.)

---

[2] Plaintiff provides only one page of the two-page clinical encounter notes. (ECF No. 1, PageID.16.)

Plaintiff reported that it was painful and made walking uncomfortable. (*Id.*) Defendant Wuest noted that she would be requesting a general surgical consultation for Plaintiff. (*Id.*) Plaintiff contends, however, that he never received surgery. (*Id.*, PageID.7.) Plaintiff's complaint, however, notes that he was transferred to another facility, and he is no longer in Defendant Wuest's care. Moreover, Plaintiff fails to allege any *facts* suggesting that Defendant Wuest failed to request the surgical consultation. Rather, Plaintiff appears to be upset about the delay in receiving the consultation, but he alleges no facts from which the Court could infer that Defendant Wuest has any control over the length of time Plaintiff must wait before receiving that appointment.

Plaintiff also appears to fault Defendants Wuest and Holdwick for not ordering a chest X-ray for chest pains and a brain MRI for dizziness. (Compl., ECF No. 1, PageID.11.) Plaintiff's complaint, however, is devoid of any facts suggesting that he told either Defendant about any chest pains or dizziness. In fact, during his appointment with Defendant Holdwick on September 20, 2023, Plaintiff explicitly denied any dizziness or other symptoms and instead focused solely on his inguinal hernia. (*Id.*, PageID.16.) Moreover, as the Supreme Court determined in *Estelle*:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

429 U.S. at 107 (footnote omitted); *see also Phillips v. Tangilag*, 14 F.4th 524, 537 (6th Cir. 2021) (noting that in *Estelle* the prisoner complained that he had been injured and continued to suffer back pain, that medical staff gave him only pain medication and muscle relaxers and did not even order an x-ray, but those allegations did not suffice to state a claim at the pleading stage). Thus, Plaintiff's allegations suggesting that Defendants Wuest and Holdwick should have ordered an X-ray and MRI do not support an inference that Defendants Wuest and Holdwick were deliberately indifferent to Plaintiff's medical need.

Based upon Plaintiff's allegations, it is clear that Plaintiff disagrees with Defendants Wuest and Holdwick's treatment decisions; however, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). Courts have determined that a physician's decision to treat a prisoner's hernia, including the decision to perform corrective surgery, is a classic example of a matter of medical judgment which does not give rise to a federal constitutional violation. *See, e.g.*, *Winslow v. Prison Health Services*, 406 Fed. App'x 671 (3rd Cir. 2011) (finding that prison doctors did not act with deliberate indifference to prisoner's medical needs by deciding to forego surgery in treatment of prisoner's hernia, even though doctors considered the cost of the procedure in declining surgery, where the prisoner's hernia was not strangulated or incarcerated and the doctor stated that the standard treatment for an inguinal hernia was non-surgical, and that with proper treatment the hernia could heal without surgical intervention); *Palazon v. Sec'y for Dep't of Corr.*, 361 Fed. App'x 88, 89–90 (11th Cir. 2010) (concluding that where medical records indicated that a prisoner's hernia was treatable without surgery, defendant state prison officials were not deliberately indifferent for making decision not to perform surgery; this case presented a classic "matter of medical judgment" which is not an appropriate basis for a federal Eighth Amendment claim).

Overall, Plaintiff's allegations concerning Defendants Wuest and Holdwick are insufficient to give rise to Eighth Amendment claims of deliberate indifference. Accordingly, while nothing set forth in this opinion prevents Plaintiff from bringing medical malpractice claims in state court, because Plaintiff has failed to allege facts suggesting that Defendants Wuest and Holdwick were

17

deliberately indifferent to Plaintiff's serious medical needs, his Eighth Amendment claims against them will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   May 16, 2024                                /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge